May it please the Court, good morning. My name is Keith Garza and I represent the appellant in this case, Tri-County Metropolitan Transportation District of Oregon, to which I will refer by its informal name, TriMet. Your Honor, this is a case under the Family and Medical Leave Act, and it presents a single question of statutory construction, and that is, or at least one iteration of this question is, can an employee claim damages under FEMLA for lost wages that result from the employee's reaction to the employer's FMLA violation? And the answer to that question is, I think in all candidness, it depends. It depends on whether the employee has a source of paid leave for the absences. If there is paid leave available for those absences, then there are recoverable damages for the employee. If, however, there are not, and that was the case here, then the employee has an FLMA claim, but that claim is limited to either a declaratory or injunctive relief, if such relief is appropriate, and of course there would be an entitlement to attorney fees if the employee was successful. Now, Judge Panner, the district judge in this case, described it as a, quote, very, very complex case, and it certainly was that. However, as it presents on appeal, the case is, I think, very, very straightforward, but I want to be clear, and I think I'm right about this, that the question that TriMet has presented to this Court is one of first impression at the circuit court level across the country. And in considering this question, and Mr. Snyder can certainly correct me if I'm wrong, I think there are four undisputed facts and four unobjectionable legal propositions that frame the issue. And let me start with the facts. The first fact is that when the plaintiff, Mr. Farrell, in this case, he definitely suffered from more than one serious health condition within the meaning of FMLA. In other words, he was FMLA qualified. Second, TriMet, according to the jury, and it's a factual finding that TriMet has accepted, TriMet interfered with Mr. Farrell's rights under FMLA by refusing one or more of his requests for FMLA leave. Counsel, maybe you'll get to this, but was the jury specifically asked to find that one of the acts was the last act that caused him to lose the time for which he seeks compensation, or do we know? No, Your Honor. I have tried to reverse engineer the jury's verdict on this, and I cannot. So the only thing we know is that at some point prior to the time that he left TriMet, there were FMLA violations where he had requested time off and the employer had refused. I think I can narrow it down just a little more than that. I think it was in September of 2003 that the FMLA violations would have occurred, according to the jury. I didn't mean to interrupt you. I'd like you to finish your list of undisputed facts. Okay. Thank you. In any event, TriMet certainly did violate Mr. Farrell's FMLA rights. And the third fact in my little litany of undisputed facts is that it's undisputed. The jury found TriMet accepts that the fact that TriMet violated his FMLA rights caused in the plaintiff sufficient emotional distress and other mental problems, frankly, to a level that probably constituted a serious health condition in and of itself, an adjustment disorder with anxiety and depressed mood. And that mental reaction resulted in plaintiff having to miss $1,110 worth of work. And the fourth fact is that at the time plaintiff missed that $1,110 worth of work, he did not have any paid leave available from TriMet in the form of either sick time or vacation or floating holiday or anything like that. And Mr. Snyder and I spoke this morning, and he suggested a clarification that I think is a good one to provide the court with. And that is there's no issue in this case that by September of 2003, Mr. Farrell no longer had 12 weeks of FMLA leave available. In other words, this is all about what kind of leave bank he had at TriMet and nothing about whether he had exhausted his three months' worth of federal leave. So is the answer that he had exhausted or we don't know? The answer is that he had exhausted his TriMet leave. So he'd used up his 12 weeks at that point. Correct. And there was a stipulation at trial to that effect. Okay. Now, with respect to the statute itself, FEMLA doesn't require the leave to be paid leave. It permits it but does not require it. Second, and as both the Supreme Court has held in the middle of the court. I'm sorry. Could you say that again? I'm not sure I understood your point. Sure. I'm sorry. I start talking too quickly. Leave under FMLA is not required to be paid leave. In other words, Congress has not required employers to pay for serious health conditions only to guarantee 12 weeks of leave in a job when you return. Let me see if I can cut to what I think is at the core here. And I commend the parties for presenting what seems to be a pretty clean issue. I guess it's your client because it elected not to contest some things. But it seems to me what we have here is a claim or an argument by TriMet that as found by the district court, this award may fall literally within the words of the statute, but read as a whole, we should infer from the statute and from the legislative history a provision that says in effect no consequential damages, that you're entitled to recovery for wages when you have leave and you're not allowed to use it. But this particular case, which produces damages in the form of lost wages when there isn't leave available, that shouldn't be permitted. Is that the core of the case? You've just stated my position. So the issue that we have to grapple with is whether there is something or enough or can be something or enough in legislative history and inference from the overall statute to trump the literal language of the statute. And maybe you can identify what it is you think that should cause us to move away from the literal language of the statute. Okay. I would phrase it just a little bit differently. And it's the literal words of the statute. There's only about four or five words on which the district court focused and on which plaintiff is relying. And we're not necessarily arguing that it's the legislative history that compels a different outcome because, as indicated in the briefing, we were unable to find anything conclusive, any remark or anything that would seem to be probative in a specific sense about what Congress intended this to mean. What we're arguing is instead of looking at that particular subsection, 2617A1A, little I, big I, and just looking to the words wages lost by reason of the violation, that you need to step back a little bit and kind of put that into context. I think that's, frankly, it is why I, in my supplemental authority, provided the court with one of its recent decisions where it talks about principles of statutory construction and the court reads not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy. And in that regard, what we're asking the court to do is to look to the part of the statute that says that leave does not have to be paid leave. In other words, if the statute starts to make sense in TriMet's view when you look at this, what has been described, I think, and I hope I'm not misquoting here, by plaintiff as TriMet's attempt to emasculate the remedy. Well, it is something of an emasculated remedy, and that explains perhaps why there's a liquidated damages provision and why there's an attorney's fee provision. Let me stop you for a second. I really want to focus on the pieces you're offering up. You've identified as an important part of the statute, and it plainly was a very important part of the statute and part of the political compromise. The statute does not require employers to offer additional paid leave. That is, you are entitled to come in and ask for time off, but they don't have to pay you for it unless it's part of what you have coming to you. But I'm not sure that directly speaks to the question we have in front of us, because the claim, it could have been made as a claim saying, look, I have these problems. I'm out of paid leave, but you've still got to give me time off and still have to pay me. That's not the claim that was found by the district court as before us today. What they're saying, not he came in and asked for more time off and should get paid for that. They're saying because of the failure to honor the act of the statute, this is a consequence of it. So what you're trying to find in the statute is not something that says you're not required to give him more days off with pay. You're trying to find in the statute an inference that says no consequential damages, including no consequential damages in the form of lost wages because you had to take more time off work. I think that's right, Your Honor. And I'm not sure where else to look other than to Section 2617, which is there. The cases that I tried to direct the district court to in this as well that deal with what I don't like to call this exacerbation theory of damages, which the district court properly distinguished on the facts as having to do not with this kind of a scenario, but with the scenario when somebody goes out on leave, they expect to be able to come back in the 10th week. Something gets messed up in the paperwork. The employee so reacts to it that they're unable to come back at the end of 12 weeks. Their condition has been exacerbated such that at the conclusion of the statutory leave period, they're unable to perform the functions of their job. Employer fires them. And the courts, I think, and now even Judge Panner has said in that circumstance, it doesn't matter because there's no entitlement to your position back if you can't perform the functions of your job at 12 weeks. What I tried to take from that is the idea that FMLA isn't concerned with how an employee becomes ill. It only matters that the employee is ill. In other words, it doesn't matter that TriMet caused Mr. Farrell to become so upset that he could come to work. The question is, could he come to work? The answer, no, he couldn't. Then the question is, well, there's a cause of action that exists. What is that cause of action? We argue he had a cause of action for declaratory relief or for an equitable remedy if one was appropriate. But as indicated in the briefing during the trial or shortly before that, Mr. Farrell indicated that he had no intention to ever return to work, which obviated the effectiveness or the viability of any claim for declaratory or injunctive relief. And that ends the case in TriMet's view. Mr. Garza, one of the things that concerned me was that I didn't see an objection by TriMet to the jury instruction that was given on causation. And the jury was specifically asked in a special interrogatory to find what the lost wages were that flowed from the violation under the FMLA by TriMet. And they answered that question by saying $1,110. Why shouldn't that be the beginning and the end of our review and conclude that this was simply an issue of, I guess, a mixed question of law and fact? The jury was apparently properly instructed because the employer didn't object, and the jury answered the question. We asked Judge Panner to take this matter away from the jury. We moved for judgment as a matter of law. And I'll cite to excerpt of record, page 49, and it's been a while, but what happened is over a recess we argued this matter with the judge. It wasn't on the record. He came back and put us on the record, and he asked me to go ahead and to state essentially what had happened. And I had indicated that you don't get to claim time off based on conduct that you alleged your employer damages you have alleged your employer caused in denying you FMLA leave. You can't kind of bootstrap yourself into that. Your Honor has indicated that... Is this the argument post-verdict? This is the argument. No, this is at the conclusion essentially of all the evidence. Of all the evidence. So before the jury was instructed. Absolutely. We lost that. And then my position would be at that point I had to try the case as the district court had framed it. There was nothing. I mean, I could have. There was nothing wrong with the way the case presented thereafter, except for the fact I thought it was going down the wrong track. So I think the issue was preserved in that regard. Could I ask what happened to the ADA claims and the Oregon State statute claims? This was an unusual case. Mr. Snyder, about the same time that I was moving for judgment as a matter of law on my FMLA and OFLA matters, he moved for judgment as a matter of law on his ADA and Oregon Rehabilitation Act claim. And the court not only denied his motion, it took those claims away from him. So at the same time that the FMLA case was permitted to go forward, Judge Panner took away the ADA case from the jury. And that's not an issue on appeal? Not an issue on appeal, Your Honor. And at this point, I mean, I'm happy to answer any questions. Maybe I'll save some time for rebuttal. Why don't you do that? Let's hear from Mr. Snyder. Thank you. Good morning, Your Honor. Good morning. I'm Dan Snyder, and I represent the bus driver, Mr. Farrell. You know, I think that there's been an inadvertent statement made by opposing counsel about a stipulation that he and I hadn't advanced. And I'd like to begin possibly by just clearing that up, because I think it's going to be central to your deliberations. I had actually approached Mr. Garza concerning a statement that he had made in his opening brief, and it's on page 8 in the first paragraph, in which he said, the jury determined the plaintiff missed work, work for which he had no available leave to cover as a result of the emotional distress or other problems that were induced by his adverse reaction to the denial of leave. And what I talked to Mr. Garza about was the fact that his use of the word available leave referred to sick time or vacation time. There's no contention in this case that my client took more than 12 weeks of leave. So if that is what the court concluded from — Well, that's what I thought I heard him say. Yes. So why don't — it's a good thing you corrected it. So you don't agree that he used up all 12 weeks at that point? No. And in fact, I talked to Keith about this in advance, and there's no contention that my client was not qualified for FEMLA because he was taking too much FEMLA time. It's just that there was no fund available to pay for the — no fund of sick or vacation time available. Right. In other words, he didn't have any paid sick time on the books or paid vacation time that he otherwise could have taken. Right. But — He used it all up at that point. Right. But what the jury returned a verdict on wasn't his 13th or 14th week of leave. Okay. That was — that's why I asked the question because I think it does make a difference. Right. Well, to be fair, I actually understood what he said to mean what you just said. Oh, yeah. So I — the source of confusion is inadvertent, I understand. Well, I thought it was important, so I wanted to begin with that. But apparently I'm the only one who's confused. Thank you for clearing that up. No, I got confused as well. Me to me, I may be the middle man. So I don't think Keith will disagree with me on this, that my client had not become unqualified because he took too much time off on FEMLA per se. The second thing is on page 23 of the — Okay, let's stop there then. Yes, sir. If that's true, then the FMLA requires only that the employer permit him to take the time off, which they're not obligated to pay him for.  Okay. So the problem we're having, obviously, is that the jury decided that he was entitled to — I hesitate to use the word, but to be made whole for the fact that the employer had violated the FMLA law, causing Mr. Farrell to have to take more time off because it aggravated the condition that he already suffered from. Certainly. And had he not been injured by his employer in that way, he would have been able to report for duty sooner, and he would have earned money that he otherwise lost because he simply wasn't at work. Right. What I would say, Your Honor, is that this was kind of an odd hopscotch sort of set of facts where he had a serious health condition. They would allow him to take FMLA, then they wouldn't allow him to take FMLA for the same serious health condition. He became emotionally ill and sought FMLA. They wouldn't allow it. He then sought FMLA for the original health condition, and they allowed it, and it went back and forth. So within this patchwork, what I'd like to say is that the reason my client is entitled to damages and the reason Judge Panner was correct is that it's irrelevant whether or not — I shouldn't put my finger up — it's irrelevant whether or not he had sick or vacation time on the books because you could have a FMLA violation with an employer who did not give an employee any sick time or vacation time. I'm not sure of the answer to this. Does the statute require 12 continuous weeks, or is it a total of 12 weeks? It's a total of 12 weeks, and it can be taken intermittently for a number of reasons. If one has a chronic condition — Which it sounds like Mr. Farrell did. Sure. Or if you need to take time — if you have a chronic condition, but maybe you need to take time off to go in for treatment, an hour here or a day here and there, so it's not 12 weeks total. What the thing was with Mr. Farrell, the appellee in this case, is that he was essentially available and willing to work, and he became emotionally ill because FMLA had been denied, so he essentially lost wages that he otherwise would have earned. And that's one of the reasons why this case is so different from the exacerbation cases that counsel has pointed the court to. And I'd also like to mention to the court that there are actually three classes of time-loss situations or leave situations that this case presented. One was intermittent leave that was out-and-out denied, for which Mr. Farrell had sick time or vacation time available. Judge Panner did not allow those to go to the jury. The second would be time that he missed from work while he was trying to get medical certifications so that he could convince TriMet to let him go back to work. We lost on that one. Judge Panner let it go to the jury, but we didn't win. And the third would be time that he missed from work, applied for family and medical leave because he became emotionally ill because his prior request for leave had been denied. That's the only one that went to the jury. What's different about this case than the exacerbation cases that counsel cited in his brief and also submitted to the court on May 1st in the supplemental briefing was that in the exacerbation cases, you really have someone that's not qualified under FEMLA. They take maybe 10 weeks of work off. FEMLA is denied by their employer, and they become more emotionally sick, and they never return to work. So they're not a qualified individual. Mr. Farrell always was qualified under FEMLA. In other words, we're really talking about him taking a day or two days here or there between which he would come back and he'd drive bus. But just using the dictionary definition of exacerbation, which I equate to aggravation, it sounds to me like it is an exacerbation claim. He is saying that, but for my employer's illegal refusal to grant me FEMLA leave, my chronic condition was aggravated, and I suffered more forced time off from work than I otherwise would have taken. I don't understand why that isn't an exacerbation theory. I hope I don't give you a long answer, but I'd like to give this to you in a couple parts. First of all, if you look at page 23 of their brief, they say the plaintiff, like the plaintiff here, relied on an exacerbation theory of damages. Now, we never argued exacerbation in this case, and it's nowhere in the record, and I conferred with Mr. Garza in advance. And that's simply the way they're characterizing this case. This plaintiff relied upon an interference theory. I'm not sure that the label is really what matters. I think the argument I understand from TriMet is that the causation, the chain that leads to this injury, is one that would not permit recovery under this statute for anything other than the lost wages, and the lost wages are happenstance. The lost wages in the statute are meant to refer to the more direct loss of wages when you have to take time off that you should be paid for and you're not, that there should be an overriding inference from this statute that you don't get consequential or that kind of causation damages. Okay. What the employer is saying is not to exceed the amount of lost wages. That's what the statute means? Is that their interpretation, not to exceed lost wages? And as far as I know, that would certainly be an anomaly, but in any event, is that what it is? I'm sorry, Your Honor. Not to exceed the amount of lost wages. That's the maximum recovery. I think it's very clear that under the FMLA statute, that the worker or employee is given a limited amount of damages that he or she can recover, and those are the sort of what we would call wages, benefits, and in limited circumstances where someone has to, like, hire an outside help to come in, those sort of damages. In this particular case, the only thing that the worker was awarded by the jury was what the statute allowed, and that is wages. These are not consequential damages. This would be a slam-dunk case for TriMet if Judge Hanner had crafted the jury verdict in a way that says, does this guy get any damages for his pain and suffering caused by the denial of FMLA? Then those would be consequential damages. But, Your Honor, what we're really talking about here, and the way Judge Hanner crafted his conclusions in this case and the jury verdict, was exactly the sort of damages that the statute allowed for. What was your damages formula that you argued in closing to the jury? How did the jury arrive at $1,110? I think he earned, like, $125 a day, and it was on a per-day basis. It's been so long, and the closing arguments aren't in here. I can't tell you exactly what days there were, but it was three or four days. What did you claim the damages were in dollars? What did you claim the damages were in dollars? I think I claimed $1,110 for that category of damages, and then I also made a separate claim for damages for the days that he missed in terms of- I'm sorry. I don't remember. I don't have my closing argument, but I think it was under $1,000 as well. So we're not talking about a lot of money here. In other words, when I stood up in front of the jury and did my closing argument, I didn't ask for a lot of money, and they basically gave me all the money I asked for on the one category of damages that we prevailed on. I take it the claims that were more valuable were the claims that the judge declined to let you go to the jury on. That's why you were left with this at the end. We did dismiss our ADA claim. Let me focus on this one because it seems to me there is a difference. We can quibble over the word consequential, but it seems to me the causation theory for this claim is a very different one from the traditional lost wages claim under this statute. The claim here isn't that I had paid lead coming to me that he didn't give me. The claim here is that because of what happened to me, I suffered further injury. In this case, it took the form of missing some more days of work. Now, I'd label that consequential, but I'm not so much concerned about the label as the fact that the causation that leads to it is different from anything else that might have been claimed with regard to lost wages. Well, I mean, I can't argue. The jury verdict is very clear. And Judge Panner asked the jury to deliberate on this point. The issue, I think, is that I think... Let me focus on what I'm really getting to because I'm confident about that part. The question I think we really have to grapple with is whether the statute has the inference which TriMet is arguing for. That is, TriMet seems to concede that, although it doesn't like the phraseology, I'll continue to use what I said before, that this fits within the literal language of the statute. The question is whether there is an overriding inference we should apply from the statute as a whole that says this kind of causation or consequential damages or whatever label we apply to it, that shouldn't be permitted. The way I think I can best answer this, Your Honor, is to refer the court to its prior decision in the Batchelder case, I hope I'm saying that correctly, in which the court said that FEMLA is a substantive right, and that is, it's an important right and you can get relief even if there are no damages. So I think that the statute does not disallow this sort of damage, and that it's important that we not run afoul of the statute itself, and that is that its purpose really is to protect workers. But I can't remember the facts in Batchelder. Was it injunctive relief, equitable remedies that the employee was seeking? Because there's no question that, and I hate to fall into the label box, but that's an entitlement theory, and the statute is clear that the court has equitable power to return the employee to the situation that he would have been in even if he didn't suffer any out-of-pocket loss from it. Okay. I think the court is correct, although there is an interesting aspect to this case, and that is the plaintiff, in effect, did achieve some equitable relief. And Judge Panner makes this very, very clear in his decision, his opinion and order. When he talks about the fact, and this is on attorney's fees, and I'd be happy to refer the court to that, it's Excerpt of Record 82, he talks about the fact that in this case plaintiff also achieved some relief in addition to monetary damages, namely an agreement that he would remain employed until eligible for retirement. The major impetus for the lawsuit was plaintiff's belief, which was reasonable given the evidence at trial, that without this litigation he was on an inexorable path towards being terminated prior to qualifying to retire with medical benefits. So here we have a case where TriMet has clearly violated the law. Mr. Farrell has clearly been damaged as a result of the violation. And I think that there's been an effort to morph these damages or to try to characterize them in some way that would result in Mr. Farrell not receiving any damages. And I think that that does not fit within the spirit of the law, and it's different from the exacerbation cases. Can I answer any additional questions for the court? Yes, and I'm still confused on the damages. I divided $1,110 by $125, and I come up with $8.88. You know, I'm so sorry, Your Honor. It's been so long since I argued the case, I can't remember the exact dollar per day. I'm fairly confident that because of the two types of damage types that we had here, that is those for the days that he missed due to his emotional distress and those that he missed due to attempting to get medical certification, that the jury gave me what I asked for on the days missed to emotional distress. It was a few days. And when I said $125 a day, I was saying that off the top of my head. It could have been $145. Right, and then that might or might not include value of any benefits that he lost. Was that included? Well, you don't remember. I don't remember. Okay. Let me ask, with respect to the amount of attorney's fees claimed, how much attorney's fees were claimed for the $1,100? Judge Panner substantially reduced our attorney's fees. How much did you ask? I think we asked for $65,000 and we ended up with $40,000 or something like that. $65,000? Yes, that included all of the time that we spent going through the entire case. And he took out the attorney fee time for the ADA case that we did not prevail on, and he kind of really chiseled it down. I think part of the problem, Your Honor, is that we conducted all of the discovery at one time and tried all of the claims at one time, which I have no doubt you've seen many times in the past. Sometimes the courts reduce the attorney's fees for not prevailing on certain claims, and sometimes they do not. Why wasn't the ADA claim appealed? I think we concluded that Judge Panner was right. It happens. We never see those claims. I'm going to send Judge Panner a note. I think you should. He remembers this case. Okay. Thank you very much, Mr. Snyder. Mr. Gargley, you get the last word. My first year at law school, Your Honors, the professor told 200 of my closest friends that obviously Mr. Garza did not major in math in college. After the verdict in this case, I sat down and I tried to calculate how the jury might have come up with this figure. I could not. I called my co-counsel and said, I'm puzzled. I can't figure it out. She said, don't try. I couldn't add it up either. That's not to say that it's not there. I just couldn't do it. However, at ER 62, which is the verdict form, the jury, and this is the actual form that was returned, the jury initially had put in for damages on, I'll call this the exacerbation theory, $1,010. Scratch that out and then put $1,110. So I'm just not sure. I just don't know how the jury in its wisdom came up with that figure. The only thing I want to, I suppose, rebut or respond to is that Mr. Snyder, when he talked about ER 82 and Judge Panner and his order on attorney fees, talking about through this litigation plaintiff has also achieved some relief in addition to monetary damages, which is he's going to stay retired until retirement. There was nothing about the jury's verdict that did that. I mean, that wasn't an element of the jury's verdict. This was something that happened as a result of the proceedings, I think, during the course of the litigation. So as part of the final judgment, the district court entered that equitable relief? No, there's nothing in there, nothing in the judgment about equitable relief whatsoever. So did your client just voluntarily agree not to fire him and to let him serve out the balance of his service time? At the trial, Your Honor, I was the appellate lawyer, so there were some things that I didn't get involved in, but it's my understanding that as the case proceeded, Mr. Farrell simply indicated that he was going to stay out on leave, and perhaps Mr. Snyder, if you want to invite him back, can explain why that happened. But he did stay out until retirement. Well, that issue's not before us. I mean, obviously there was some sort of equitable remedy here, whether it was by virtue of the employer simply not taking termination action against him when he didn't come back to work. We don't know and we don't care. And I just wanted to make sure that any equitable relief that he got was practical and not incorporated into the judgment. Well, I take it the implication for the attorney fee award, which is encompassed in your, I guess you file an amended notice of appeal. Anyways, you don't really challenge the award directly. You challenge the award insofar as it's premised on the judgment, and if we should in some fashion alter the judgment, I take it the proper result would be to send the attorney fee issue back to the district court to determine what the effect would be. We're not in a position to try to recalculate or do much else with the attorney fee award. Correct, Your Honor. My theory was is that, and perhaps I'm wrong about this, this is kind of an all-or-nothing shot for TriMet on appeal. We're saying, Judge Panner, you should have given us judgment as a matter of law. He didn't. I'm asking you to do that for him. And the effect would be to enter judgment in TriMet's favor on the only, or to remand for purposes of the district court doing that, to enter judgment in TriMet's favor on the only thing that went to the jury that the jury returned a verdict against us on. I understand that with regard to the $1,000 and change. With regard to the attorney fee issue, I think about all we could do is, since we're not in a position to, Judge Panner appears to have said, plaintiff received some relief, and you can do that by virtue of acquiescence. It doesn't have to be a jury verdict. So it seems to me your request really is to undo the damage award and to send the attorney fee issue back to the district court if we've decided to undo the damage award. Because the district court could say, even if you get zero from the jury, there has been some relief achieved, and for that some entitlement to attorney's fees needs to be recognized. He could say otherwise too, but I don't think we're in a position to overrule that. I think you're right, Your Honor. I think Mr. Snyder would be free to revisit that with the district judge. Thank you. Any further questions? All right. If not, the case disargued will stand submitted.
judges: Tallman, Clifton, Carroll